757 A.2d 836 (2000)
334 N.J. Super. 226
Helene STORCH, Plaintiff,
v.
Erika SAUERHOFF, Defendant.
Superior Court of New Jersey, Chancery Division, Family Part, Union County.
Decided May 5, 2000.
Revised May 11, 2000 and June 13, 2000.
*837 Harold L. Gechtman, Esq., Livingston, for plaintiff.
Joseph A. Ascione, Esq. for defendant.[1]
Decided May 5, 2000 by letter opinion.
ALCAZAR, J.S.C.
The plaintiff in this case seeks a Final Restraining Order under the Prevention of Domestic Violence Act of 1991. N.J.S.A. 2C:25-17, et seq. The Temporary Restraining Order entered on April 5, 2000 was issued based upon the parties' status as former household members. The parties appeared for a final hearing on April 11, 2000 and the defendant moved to dismiss the plaintiff's Domestic Violence Complaint on the ground of lack of jurisdiction. On April 11, 2000, this court entered an Amended Temporary Restraining Order and requested briefs from the attorneys on the issue of jurisdiction. In her brief, the plaintiff has argued for jurisdiction on the basis of present household membership. The question before this court is whether the plaintiff has established jurisdiction in order to be able to seek the protections of the Act. N.J.S.A. 2C:25-19(d).
I. PREVENTION OF DOMESTIC VIOLENCE ACT OF 1991
The legislative intent underlying the Prevention of Domestic Violence Act is "to assure victims of domestic violence the maximum protection from abuse the law *838 can provide." N.J.S.A. 2C:25-18. The Legislature further mandates that "it is the responsibility of the courts to protect victims of violence that occurs in a family or family-like setting by providing access to both emergent and long-term civil and criminal remedies and sanctions, and by ordering those remedies and sanctions that are available to assure the safety of the victims and the public." Ibid. The Legislature further intended the broad application of the remedies available under the Act in the civil and criminal courts of this State. Ibid.
Under the Prevention of Domestic Violence Act, a victim is defined as:
"any person who is 18 years of age or older or who is an emancipated minor and who has been subjected to domestic violence by a spouse, former spouse, or any other person who is a present or former household member. `Victim of domestic violence' also includes any person, regardless of age, who has been subjected to domestic violence by a person with whom the victim has a child in common, or with whom the victim anticipates having a child in common, if one of the parties is pregnant. `Victim of domestic violence' also includes any person who has been subjected to domestic violence by a person with whom the victim has had a dating relationship."

[N.J.S.A. 2C:25-19(d) ].
Remedial statutes are to be given a liberal interpretation and should be construed to give the terms used the most extensive meaning to which they are reasonably susceptible. Global Am. Ins. v. Perera Co., 137 N.J.Super. 377, 349 A.2d 108 (Ch.Div.1975) aff'd 144 N.J.Super. 24, 364 A.2d 546. In interpreting a statute, the fundamental duty of the courts is to effectuate the intent of the Legislature, considering the legislative policy underlying the statute and any helpful history. See Lesniak v. Budzash, 133 N.J. 1, 626 A.2d 1073 (1993). Moreover, where a literal reading of a statute will lead to a result which is not in accord with its essential purpose and design, the spirit of the law will control the letter. State v. Ochoa, 314 N.J.Super. 168, 714 A.2d 349 (App.Div. 1998).
The term "household member" is not defined in the Act.[2] The term resists specific definition. Recently the New Jersey Supreme Court rejected the restrictive definition of "household" contained in Black's Law Dictionary.[3]Gibson v. Callaghan, 158 N.J. 662, 730 A.2d 1278 (1999). The Court found that residence under a single roof is not a touchstone of a "household" and that the meaning of the term will vary depending on the circumstances of a given case. Gibson, supra, 158 N.J. at 677, 730 A.2d 1278; see also Mazzilli v. Accident & Casualty Ins., 35 N.J. 1, 8, 170 A.2d 800 (1961).
In the context of insurance, the term "household" has been defined as a "substantially integrated family relationship" even where the household members are not continually under the same roof. Mazzilli supra, 35 N.J. at 16, 170 A.2d 800; Arents v. General Accident Ins. Co., 280 *839 N.J.Super. 423, 429, 655 A.2d 936 (App. Div.1995). In the insurance cases, the term is viewed liberally where the purpose is to extend coverage. See South v. North, 304 N.J.Super. 104, 112, 698 A.2d 553 (Ch. Div.1997). This definition is persuasive considering the necessity to protect alleged victims of domestic violence. As the court recognized in Mazzilli, supra, 35 N.J. at 14, 170 A.2d 800,
the term `household' or `resident of the household' cannot be so limited and strait-jacketed as always to mean, regardless of the facts and circumstances, a collective body of persons who live in one house.
The Legislature could have provided a definition for "household member" if it intended to limit the court's interpretation of the term. Instead, the Legislature has expanded the jurisdictional grounds of the Act over the years. The Domestic Violence Act of 1991 amended the prior definition of "victim" by replacing the word "cohabitant" with "household member." It is clear that the intent of the amendment was to expand the coverage of the Act and to extend protection to any person who has a close relationship with his or her batterer." South, supra, 304 N.J.Super. at 109, 698 A.2d 553. Furthermore, the Act has been further amended to expand the list of persons protected. While the prior law required that victim be cohabitants of opposite sex, or, if not of the opposite sex, related by blood, the current Act protects unrelated, same sex persons living together, elderly persons in the care of unrelated persons and any other present or former household member. Cannel, Current N.J. Criminal Code, comment 1 on N.J.S.A. 2C:25-19.
E. De Facto Household Members
In Desiato v. Abbott, 261 N.J.Super. 30, 617 A.2d 678 (Ch.Div.1992), the court held that a girlfriend met the jurisdictional requirements of being an alleged victim of domestic violence in light of the family-like setting of the relationship that resulted in the parties being de facto "household members" within the meaning of the Act, even though the parties had never been married or shared the same legal residence.[4] The court in that case construed the term "household member" to require more than a casual dating relationship but less than the parties residing together." Desiato, supra, 261 N.J.Super. at 34, 617 A.2d 678. In reaching its decision the court found that the definitional standard of a "household member" should be measured by the frequency of the time the parties spend together and a variety of other factors. Ibid.
The rationale of Desiato, supra, 261 N.J.Super. at 30, 617 A.2d 678, was cited favorably by the Appellate Division in Bryant v. Burnett, 264 N.J.Super. 222, 227, 624 A.2d 584 (App.Div.1993) (holding that the intent as to the permanency of the household relationship and the circumstances of the invitation or agreement to live together were irrelevant where the plaintiff had lived in the defendant's household for three months) cert. denied, 134 N.J. 478, 634 A.2d 525.
In South, supra, 304 N.J.Super. at 112, 698 A.2d 553, Judge DiCamillo found that the defendant, Greg North, was a de facto household member by virtue of his paternity to Mac South (the plaintiff's grandson), his engagement to Amy South (the plaintiff's daughter) and his unlimited access to the plaintiff's home, even though the parties lived in separate apartments in the same complex. The parties in that case shared food, cooking chores, and responsibility for disciplining the child and on occasion North stayed overnight at the plaintiff's apartment when she was not at home. Id. at 107, 698 A.2d 553. Judge DiCamillo also noted that the parties in that case were more of a "family" than in *840 many of the cases where the parties were considered "household members." Id. at 112, 698 A.2d 553.
F. Former Household Members
In Jutchenko v. Jutchenko, 283 N.J.Super. 17, 660 A.2d 1267 (App.Div.1995), the Appellate Division held that the Act did not apply to allegations of domestic violence between brothers who had not resided in the same household for 20 years "at least in the absence of any showing that the alleged perpetrator's past domestic relationship with the alleged victim provides a special opportunity for `abusive and controlling behavior.' " Id. at 20, 660 A.2d 1267, emphasis added.
Similarly, the court in Sisco v. Sisco, 296 N.J.Super. 245, 686 A.2d 792 (Ch.Div.1996) found that an adult daughter's allegations of domestic violence against her father did not establish jurisdiction under the Act where the parties in that case had not resided in the same household for more than 15 years. Additionally, the court found that the plaintiff had failed to establish the existence of an "abusive and controlling behavior." Id. at 249, 686 A.2d 792.
These two cases illustrate that the jurisdictional ground for protecting former household members cannot be read literally and must instead be viewed in light of the purposes of the Act. The Act recognizes that victims who have familial, emotional or financial ties with the person who has abused them need special protection. Under this case law, the court's predicate for exercising jurisdiction is that the "former household" relationship essentially places the plaintiff in a more susceptible position for abusive and controlling behavior in the hands of the defendant.
II. Analysis
The plaintiff in the case at bar is the defendant's stepdaughter. The plaintiff's father has been married to the defendant for about thirty years. The plaintiff last resided with the defendant and her father in 1981, approximately 19 years ago. For the last 11 years, the plaintiff and the defendant have lived at separate residences on the same block. The plaintiff resides at 145 Wilder Street in Hillside, New Jersey and the defendant resides at 136 Wilder Street in Hillside, New Jersey. Moreover, the plaintiff's half-sister, who is also the defendant's daughter, owns property which is adjacent to the plaintiff's home. The plaintiff's children and her half-sister's children often play together on a lot located "directly to the rear of plaintiff's home, in common with that of the plaintiff's half-sister's home." The plaintiff alleges that the defendant often visits this lot to be with the children. The defendant has not disputed this allegation.
The defendant's attorney argues that the defendant is neither a "family" member nor a member of the household. I find otherwise. While the defendant may not be a blood relative, the defendant has been a member of the plaintiff's family for the past 30 years. Moreover, the parties have maintained a close living arrangement for more than a decade. While the defendant certifies that she infrequently visits the plaintiff's home, she admits that the plaintiff has chosen to attend various dinners, family and religious functions at her home. It also appears that the defendant on occasion cares for the plaintiff's children, along with her daughter's children. Furthermore, the plaintiff's children often play with their cousins on three "family" properties.
The case at bar presents a unique jurisdictional analysis because the factual scenario as presented to the court involves a hybrid of two jurisdictional grounds: "present household member" and "former household member." This court recognizes that the parties have not physically resided under the same roof for approximately 19 years. However, this fact is not dispositive of the court's inquiry into whether the plaintiff is an alleged "victim" of domestic violence under the Act. This *841 case is factually distinguishable from the cases which denied jurisdiction based upon the remoteness of the former household membership or dating relationship. See Jutchenko, supra, 283 N.J.Super. at 20, 660 A.2d 1267; Sisco, supra, 296 N.J.Super. at 249, 686 A.2d 792; Sperling v. Teplitsky, 294 N.J.Super. 312, 321, 683 A.2d 244 (Ch.Div.1996) (holding that the Prevention of Domestic Violence Act of 1991 did not apply where the parties had not been in a relationship or in contact for five years).
In contrast, the parties in this case have a long standing familial and emotional relationship which the plaintiff alleges has been characterized by controlling and verbal abuse.[5] There also appears to be financial ties between the parties, as the defendant states in her certification that she and her husband, the plaintiff's father, have contributed in excess of $125,000 toward the purchase of the plaintiff's home and toward the adoption of her children. Undisputed facts have established that the parties not only have lived in close physical proximity for the last 11 years, but the parties are also intimately related and involved with the plaintiff's children who constitute the center of the familial relationships. See South, supra, 304 N.J.Super. at 112, 698 A.2d 553. Moreover, the incident giving rise to this matter allegedly occurred in the plaintiff's home and appears to have been the result of a disagreement between the parties over the plaintiff's half-sister, the defendant's daughter.
Following the rationale of South, supra, 304 N.J.Super. at 112, 698 A.2d 553, this factual scenario suggests a strong case for a finding that the parties are de facto household members. While not every family dispute gives rise to a basis for the exercise of jurisdiction under the Act, see Sisco, supra, 296 N.J.Super. at 247, 686 A.2d 792, it is the very nature of the parties former domestic relationship which has created the present de facto household relationship. It is clear to this court that a determination as to a party's status as a "household member" must be based upon "the qualities and characteristics of the particular relationship and not upon a mechanistic formula in a definition." See Dunphy v. Gregor, 261 N.J.Super. 110, 122, 617 A. 2d 1248 (App.Div.1992). The parties share, whether by choice or circumstance, a "substantial integrated family relationship" where each has separate sleeping quarters but must interact on a frequent basis.
Based upon the testimony of the plaintiff on the record, the certification of the defendant and the briefs submitted, I find that this court has jurisdiction in this case. This matter is hereby scheduled for a final hearing on Monday, June 5, 2000 at 1:30 p.m.
NOTES
[1] Defendant substituted Mr. Ascione for Mark Chesser, Esq. as her attorney at the final hearing on June 5, 2000.
[2] The term "household member" is defined in the "Family Daycare Provider Registration Act." N.J.S.A. 30:5B-16, et seq. It is defined "as an individual over 14 years of age who resides in a family day care provider's home." N.J.S.A. 30:5B-25.2. This definition, however, must be viewed in light of the legislative intent to balance the rights of family day care providers with the state's duty to protect the safety of children. The Family Daycare Provider Registration Act had previously required criminal history background checks, but this requirement had resulted in a significant drop in both the registrations and renewals. Since the family day care registration system is voluntary, providers chose to continue to operate without State supervision. N.J.S.A. 30:5B-25.1. This restrictive definition therefore is not applicable in the domestic violence matters because it was drafted to encourage State supervision of family dare care providers.
[3] Cf., Croswell v. Shenouda, 275 N.J.Super. 614, 624, 646 A.2d 1140 (Ch.Div.1994), cites the Black's Law Dictionary of a "household" as a family living together or those who dwell under the same roof and compose a family."
[4] Note that case was decided before the Act was amended to include a "dating relationship" as a jurisdictional ground.
[5] The court accepts this allegation only for the purpose of determining whether the plaintiff's complaint should be dismissed for lack of jurisdiction.