JUSTICE TIMPONE delivered the opinion of the Court.
**5 Jennifer Kocanowski was a volunteer firefighter for seventeen years and was injured in the course of her duties. Kocanowski applied for and was denied temporary disability benefits because she did not have outside employment. In this appeal, we consider whether volunteer firefighters must be employed to be eligible for temporary disability benefits under the Workers' Compensation Act (Act), N.J.S.A. 34:15-1 to -146.
The Appellate Division affirmed the denial of temporary disability benefits by the Division of Workers' Compensation, finding Kocanowski's unemployment at the time of injury precluded her from receiving coverage.
We now reverse the Appellate Division's judgment. While N.J.S.A. 34:15-75's language is unclear, we find its legislative history indicates a strong intent to provide temporary disability coverage to volunteer firefighters at the maximum compensation provided for in the Act.
I.
A.
We elicit the following facts from the testimony before the Division of Compensation.
**6 Kocanowski was a volunteer firefighter for approximately seventeen years; she served fifteen of those years at the Finderne Fire Department in the Township of Bridgewater. During her fifteen years working for the Finderne Fire Department, Kocanowski several times received "Top 10" and "Top 5" responder recognition.
In addition to her volunteer work, Kocanowski usually had outside paid employment, including working as a nanny and home health care aide. In October 2013, Kocanowski left her outside employment to provide care for her ill father. Kocanowski's father died in November 2013, and she lost her brother shortly thereafter. Her home health aide license lapsed while she was coping with family issues.
Kocanowski took a six-month leave from volunteer firefighting after her father's death to care for her ill mother and settle her father's estate. She returned to volunteer *97 firefighting around July 2014, but did not resume outside employment.
On March 6, 2015, Kocanowski and other volunteer firefighters from Bridgewater responded to a multi-alarm fire in Franklin Township. While carrying equipment, Kocanowski slipped on ice. She broke the upper shaft of her right fibula, severely damaged her ankle, and tore several ligaments.
Kocanowski underwent surgery and received numerous medical treatments for her injuries, but she began to experience back pain and knee pain in addition to her ankle pain in the weeks after the accident. Her doctors discovered two fractures in her foot, a torn meniscus in her acutely arthritic left knee, damage to the peroneal nerve on her right leg, and impairment to her back -- all sustained as a result of the fall. Kocanowski underwent another surgery, further treatments, and intensive physical therapy. Yet, she continues to experience issues with her back, legs, and feet, all of which impede her ability to return to volunteer firefighting and her previous outside employment as a nanny or home health care aide. Kocanowski has also been unable to continue caring for her **7 mother since the accident. Her injuries and the accompanying pain limit her ability to drive more than very short distances.
Kocanowski received $125 per week in benefits from the Finderne Fire Department for one year following the accident. She has no other source of income.
B.
On December 14, 2015, Kocanowski filed a Notice of Motion for Temporary and/or Medical Benefits, including a request for a 25% additional penalty for failure to pay timely temporary disability benefits.
The Division of Workers' Compensation judge heard and denied Kocanowski's application for temporary benefits on March 9, 2016. The judge acknowledged that N.J.S.A. 34:15-75 awards "maximum compensation" to volunteer firefighters injured in the course of their volunteer work but found that temporary disability benefits were intended as a wage-replacement. The judge therefore concluded Kocanowski was not entitled to temporary disability benefits because she had not been employed at the time of her accident.
C.
Kocanowski appealed, arguing the compensation judge had erred in finding an outside employment requirement before volunteer firefighters were eligible to receive temporary disability benefits.
The Appellate Division affirmed the compensation judge's determination that pre-injury outside employment is a necessary predicate to awarding temporary disability benefits to volunteer firefighters. Kocanowski v. Township of Bridgewater, 452 N.J. Super. 476, 478, 483, 175 A.3d 968 (App. Div. 2017). The panel analyzed N.J.S.A. 34:15-38 (which provides the method of calculating compensation for temporary disability benefits), with heavy emphasis on the language "able to resume work."
**8 Id. at 481-82, 484, 175 A.3d 968. Relying on Outland v. Monmouth-Ocean Education Service Commission, 154 N.J. 531, 713 A.2d 460 (1998), and Cunningham v. Atlantic States Cast Iron Pipe Co., 386 N.J. Super. 423, 901 A.2d 956 (App. Div. 2006), the panel determined a claimant must provide proof of lost income in order to receive temporary disability benefits. Kocanowski, 452 N.J. Super. at 484-85, 175 A.3d 968.
The Appellate Division found the award of temporary disability benefits to an unemployed volunteer firefighter in Capano v. Bound Brook Relief Fire Co., 356 N.J. Super. 87, 811 A.2d 510 (App. Div. 2002), *98 did not control because that case turned on whether the claimant's injury occurred "in the line of duty," instead of the issue raised here. Kocanowski, 452 N.J. Super. at 485, 175 A.3d 968. The Appellate Division ultimately concluded "that although a volunteer firefighter is entitled to temporary benefits at the maximum rate ... there first must be an entitlement by the volunteer to payment of temporary benefits. That payment depends on proof of lost wages." Ibid.
We granted Kocanowski's petition for certification. 232 N.J. 413, 180 A.3d 724 (2018). We also granted the New Jersey Association for Justice (NJAJ) leave to appear as amicus curiae. The New Jersey Advisory Council on Safety and Health (COSH), which appeared as amicus before the Appellate Division, participated as amicus before this Court pursuant to Rule 1:13-9.
II.
A.
Kocanowski urges us to reverse the Appellate Division and find she is entitled to temporary disability benefits. Kocanowski argues that the typical requirement that temporary disability benefits be awarded only to replace lost wages does not apply to volunteer firefighters. Kocanowski emphasizes the statutory history of the Act, particularly as it relates to an expansion of protections for volunteer firefighters over time.
**9 B.
Amici curiae COSH and NJAJ each support and echo many of the arguments made by Kocanowski. COSH and NJAJ highlight the relevance of Cuna v. Board of Fire Commissioners, 42 N.J. 292, 200 A.2d 313 (1964), and Capano, 356 N.J. Super. 87, 811 A.2d 510.
C.
Defendant Township of Bridgewater asks us to affirm the Appellate Division, arguing temporary disability benefits are intended to replace lost wages and consequently are unavailable to unemployed volunteer firefighters injured in the line of duty. Defendant emphasizes language in N.J.S.A. 34:15-38, which calculates temporary disability compensation with reference to when an "employee is first unable to continue at work" and when "the employee is able to resume work."
III.
We review issues of statutory interpretation de novo. State v. Fuqua, 234 N.J. 583, 591, 192 A.3d 961 (2018). "The Legislature's intent is the paramount goal when interpreting a statute and, generally, the best indicator of that intent is the statutory language." DiProspero v. Penn, 183 N.J. 477, 492, 874 A.2d 1039 (2005). A court normally ascribes to the statute's words their "generally accepted meaning," Spade v. Select Comfort Corp., 232 N.J. 504, 514-15, 181 A.3d 969 (2018) (quoting N.J.S.A. 1:1-1 ), and construes them "in context with related provisions so as to give sense to the legislation as a whole," id. at 515, 181 A.3d 969 (quoting N. Jersey Media Grp. v. Township of Lyndhurst, 229 N.J. 541, 570, 163 A.3d 887 (2017) ).
"[I]f there is ambiguity in the statutory language that leads to more than one plausible interpretation, we may turn to extrinsic evidence, 'including legislative history, committee reports, and contemporaneous construction.' "
**10 DiProspero, 183 N.J. at 492-93, 874 A.2d 1039 (quoting Cherry Hill Manor Assocs. v. Faugno, 182 N.J. 64, 75, 861 A.2d 123 (2004) ). We also consider "extrinsic evidence 'if a literal reading of the statute would yield an absurd *99 result, particularly one at odds with the overall statutory scheme.' " State v. Twiggs, 233 N.J. 513, 533, 187 A.3d 123 (2018) (quoting In re N.B., 222 N.J. 87, 98-99, 117 A.3d 1196 (2015) ).
IV.
"We have long recognized that [the Workers' Compensation Act] is remedial legislation and should be given liberal construction in order that its beneficent purposes may be accomplished." Estate of Kotsovska v. Liebman, 221 N.J. 568, 584, 116 A.3d 1 (2015) (alteration omitted) (internal quotation omitted) (quoting Cruz v. Cent. Jersey Landscaping, Inc., 195 N.J. 33, 42, 947 A.2d 1228 (2008) ). Under the Act, volunteer firefighters may recover temporary disability benefits:
Compensation for injury and death, either or both, of any volunteer fireman ... [or] emergency management volunteer doing emergency management service ... shall:
a. Be based upon a weekly salary or compensation conclusively presumed to be received by such person in an amount sufficient to entitle him [or her], or, in the event of his [or her] death, his [or her] dependents, to receive the maximum compensation by this chapter authorized ....
b. Not be subject to the seven-day waiting period provided in [ N.J.S.A. 34:15-14 ].
[ N.J.S.A. 34:15-75.]
The statute's reference to "based upon a weekly salary or compensation conclusively presumed to be received" is unclear. Ibid. Accordingly, we turn to "extrinsic evidence, 'including legislative history.' " DiProspero, 183 N.J. at 492-93, 874 A.2d 1039 (quoting Cherry Hill Manor Assocs., 182 N.J. at 75, 861 A.2d 123 ).
As background to the interpretive question before us, we note workers' compensation was first provided for in New Jersey in 1911. L. 1911, c. 95. The initial law capped temporary disability benefits at "fifty per centum of the wages received at the time of injury, subject to a maximum compensation of ten dollars per **11 week and a minimum of five dollars per week." Id. § 11(a). The original Act provided that if an employee earned "less than five dollars per week, then he shall receive the full amount of such wages per week." Ibid. The Act also created a waiting period during which temporary disability benefits were unavailable. The waiting period is currently seven days. N.J.S.A. 34:15-14. In 2001, the seven-day waiting period was waived for volunteer firefighters. L. 2001, c. 328 (codified at N.J.S.A. 34:15-75(b) ).
In 1931, the Legislature created a requirement that "every municipality, and the committee of every fire district ... provide compensation insurance for volunteer firemen." L. 1931, c. 172, § 1. This statute, the predecessor to N.J.S.A. 34:15-75, provided "payments of compensation shall be based upon the weekly salary or compensation received by such volunteer fireman in private employment." Id. § 2. The statute created certain protections for volunteer firefighters who did not have ordinary wages or salaries or who were unemployed at the time of their injury:
[A]ny volunteer fireman whose income is derived from any source other than wages or salaries shall be entitled to receive the maximum compensation ... and where not employed at the time of ... injury, such compensation shall be ascertained and paid upon the basis of the weekly compensation last received by such person when so employed.
[Ibid. ]
The statute allowed unemployed volunteer firefighters to recover based on their *100 most recent previous income. The statute was amended in 1952 to its current form. L. 1952, c. 316, § 2 (codified at N.J.S.A. 34:15-75 ).
Volunteer firefighters have long held an important role in New Jersey. The Legislature has long sought to encourage that role by providing certain protections and exemptions for volunteer firefighters. In Cuna, this Court provided a brief history of volunteer firefighters in New Jersey, our municipalities' reliance on them for protection, and several measures adopted by the Legislature "to encourage the formation and maintenance of such companies." See 42 N.J. at 295-97, 200 A.2d 313 (discussing, among other legislative acts: L. 1826, p. 36, § 1, titled "An act for the encouragement of **12 Fire Companies," which exempted volunteer firefighters "from militia duty in time of peace"; L. 1880, c. 128, § 1 (repealed by L. 1995, c. 44, § 3), which exempted firefighters with seven consecutive years' experience from jury duty, and its update via L. 1903, c. 77, § 1, which removed the requirement of consecutive service; and N.J.S.A. 45:24-9, a current statute that includes firefighters among several groups granted special licenses "to hawk, peddle and vend any goods, wares or merchandise or solicit trade within this State"). As noted by the Cuna Court, "[t]hese provisions indicate a deliberate recognition by the Legislature of the great benefits conferred upon municipalities by the volunteer fire companies." Id. at 297, 200 A.2d 313.
In recognition of the protections and benefits the Legislature has created for volunteer firefighters, our courts have liberally construed the Workers' Compensation Act to provide coverage for volunteer firefighters. See, e.g., Cuna, 42 N.J. at 306, 200 A.2d 313 (finding a volunteer firefighter who was injured while playing for the department's baseball team was injured "in the line of duty"); Capano, 356 N.J. Super. at 95, 811 A.2d 510 (finding a 93-year-old volunteer firefighter who was injured while tending the firehouse stove had been performing a "public fire duty" at the time notwithstanding that he had no outside employment). It would be incongruous and inconsistent, after years of expanding protections and exemptions for volunteer firefighters, for the Legislature to abruptly limit the class of volunteer firefighters who qualify for temporary disability from any volunteer firefighter who had ever been employed to only volunteer firefighters employed at the time of injury.
In sum, the extrinsic evidence and legislative history decidedly indicate the Legislature intended to increase temporary disability coverage for volunteer firefighters injured in the course of performing their duties when it enacted the current form of N.J.S.A. 34:15-75, and not create new barriers to coverage. As such, we find N.J.S.A. 34:15-75 authorizes all volunteer firefighters injured in the course of performing their duties to receive the **13 maximum compensation permitted, regardless of their outside employment status at the time of injury.
Defendant urges us to find N.J.S.A. 34:15-38 sets an eligibility standard, requiring temporary disability claimants to provide proof of outside employment to be eligible for temporary disability benefits. Notably, this statute is a general, all-purpose statute, not specific to firefighters. N.J.S.A. 34:15-38 provides a "method of calculating compensation for temporary disability":
To calculate the number of weeks and fraction thereof that compensation is payable for temporary disability, determine the number of calendar days of disability from and including as a full day the day that the employee is first unable to continue at work by reason of *101 the accident, including also Saturdays, Sundays and holidays, up to the first working day that the employee is able to resume work and continue permanently thereat; subtract from this number the waiting period and any days and fraction thereof the employee was able to work during this time, and divide the remainder by 7. If, however, the total period of disability extends beyond 7 days, the waiting period shall not be subtracted from the number indicated above. The resulting whole number and sevenths will be the required period for which compensation is payable on account of temporary disability.
[ (emphases added).]
Defendant argues language like "first unable to continue at work," and "able to resume work" demonstrates temporary disability only applies when the claimant was working at the onset of his or her disability. We find nothing in either the plain language of the statutes or their legislative histories to indicate such an intent.
Indeed, N.J.S.A. 34:15-38 existed alongside the pre-1952 version of N.J.S.A. 34:15-75, which as noted earlier allowed volunteer firefighters who were unemployed at the time of their injury to receive benefits. N.J.S.A. 34:15-38 did not bar benefits then. There is no reason to think it does now, after the amendment to N.J.S.A. 34:15-75 which loosened restrictions and provided greater protections to volunteer firefighters.
Also, it is not a reach to find that volunteer firefighters injured in the course of their firefighting duties were at work, unable to continue at work and, in Kocanowski's case, unable to resume work. While the statute generally calls for a "waiting period"
**14 before the temporary disability payment may be paid, the Legislature clearly exempted volunteer firefighters from that waiting period. So, we decline to adopt defendant's "square peg into a round hole" theory that N.J.S.A. 34:15-38 precludes coverage for volunteer firefighters injured in the course of performing their firefighting duties.
Moreover, to require prior outside employment as suggested by N.J.S.A. 34:15-38 in order to qualify for N.J.S.A. 34:15-75's presumption of entitlement of the maximum compensation would lead to absurd results. Defendant's interpretation would allow a volunteer firefighter who completes work for a nominal salary, say $5 weekly to deliver newspapers, to automatically receive the maximum compensation authorized while a volunteer firefighter like Kocanowski, who had no outside compensation at the time of her injury, would receive no temporary disability benefits. Both firefighters take the same risks in their duties for the fire departments. It is an illogical result that the former firefighter would receive $855 weekly in benefits (based upon the maximum available at the time Kocanowski was injured), while the latter would receive nothing.
In sum, we conclude that the Legislature's amendment in 1952 creating the current version of N.J.S.A. 34:15-75 was intended to grant all volunteer firefighters the maximum compensation allowed, regardless of current or previous income.
V.
We reverse the judgment of the Appellate Division and remand the matter to the Division of Workers' Compensation for the award of benefits consistent with the principles outlined in this opinion.
CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, and SOLOMON join in JUSTICE TIMPONE'S opinion.